Budd *v.* Van Orden.

---

---

## Nelson L. Budd

*v.*

## John A. Van Orden.

1. In determining the question whether a deed, absolute on its face, is what it purports to be, or a mortgage, the fact that the parties, after the execution of the deed, still understood that the relation of creditor and debtor continued, in respect to the debt on which the deed is founded, must generally be regarded as decisive in showing that the instrument was intended to be a mortgage.

2. The only infallible test of the value of a merchantable article is what it is actually sold for at a fair sale.

3. A mortgagee in possession, holding under a deed absolute on its face, who sells the mortgaged premises, is bound to account to his mortgagor at the price at which he sold, though he may be able to show, by the opinion of competent judges, that such price is in excess of their market value.

---

On final hearing on bill, answer and proofs.

*Mr. Joseph Coult,* for complainant.

*Mr. J. S. Salmon,* for defendant.

THE VICE-CHANCELLOR.

The principal object of this suit is to have a deed, absolute on its face, declared to be a mortgage. The parties are brothers-in-law. The deed, which it is sought to change to a mortgage, was made in August, 1870, and conveyed the whole of the complainant's interest in his father's estate. At the date of the deed, his father, Barney Budd, had been dead about three years. When the deed was made the complainant resided in the west, but some weeks prior to its execution had come to New Jersey to raise money on his share in his father's estate. He returned to the west very soon after the deed was executed. The first transaction between the parties, it is admitted, was a loan. The defendant agreed to loan the complainant $500, to be secured by a mortgage on his interest in his father's estate, and a policy on his life for $1,000. The mortgage was executed and the policy procured, and both delivered to the defendant in June, 1870. The defendant still held the mortgage at the time of the trial, but he surrendered the policy after $128 in premiums had been paid upon it, and received, as its surrender value, the sum of $18. The deed purports, upon its face, to have been made for a consideration of $900. It is not disputed that this sum was handed by the defendant to the complainant, nor that $400 of it was immediately handed back to the defendant's wife, for which she gave the complainant her note. The defendant insists that the deed was made in execution of an actual purchase, and that the $900 passed to the complainant was passed in payment of the sum agreed upon as the purchase-money, and that the $400 handed to his wife was a deposit he required the complainant to make, as a condition of his purchase, to answer a claim made by the executors of Barney Budd against the complainant, the amount of which was then undetermined. But the defendant admits that on the delivery of the deed it was understood that he should continue to hold the policy as security. He says the arrangement was this : that he should keep the policy alive, and if he did not succeed in selling the interest which he had purchased of the complainant for what he had paid for it, and the complainant should die, he was to have the right to retain, out of the sum

received on the policy, the premiums he had paid, and also any loss he might have sustained on the sale of the complainant's interest, and that the balance, if any, should be paid to the complainant's family. The complainant, on the contrary, alleges that after the mortgage and policy were delivered, the defendant became apprehensive that difficulty might arise out of the claim made by the executors against the complainant, and his security in consequence might prove insufficient. He says that the defendant then suggested that a deed would give him a better security for his loan, and put him in a position where he could deal much more advantageously in arranging the claim of the executors; that he could then represent that he had purchased and paid for the complainant's interest, and thus constrain the executors to make a fair settlement. He says he yielded to this suggestion, and consented to execute a deed for the purpose of giving the defendant a more perfect security for his loan.

I think it is conclusively shown that the deed was not given or intended as an absolute conveyance, but as a security. The proof on this point furnished by the defendant's letters, is so decisive that the defendant's counsel but faintly questioned that such must be the determination of the court. The defendant, on the 2d of August, 1871, sent to the complainant a release, to be executed by him to the executors of his father's will. By Barney Budd's will, his executors were directed to convert nearly the whole of his estate into money, and divide it equally among his eleven children.. In the letter accompanying this release, the defendant said:

"I have made the amount in the release to correspond with the deed, but I will make this right in our final settlement."

In a letter written to the complainant August 11th, 1871, the defendant says:

"I will not have time, before the mail closes, to give you a detailed account of the whole thing, but will try and make a plain, short statement of things as they are. And first I would say I regret that I have not kept you more fully posted, but one reason is, that when the question was asked me whether I had bought you out, I said 'Yes;' and of course had to maintain and look after that interest."

10

In a letter dated September 8th, 1871, he says:

" If you will fill out and send on that release, I will send the balance to make your share equal with the rest, and I will do more if I do well with the place. * * * I do not remember whether the interest runs from the time the mortgage was made, June 13th, or from the time the deed was made, August 20th; perhaps you will recollect, and can see what it amounts to."

And in a letter dated January 9th, 1872, he says:

"I answered your letter in regard to your interest in the old place. * * * I sometimes regret that I had anything to do with it, especially that part of it, as it places me in rather an unenviable light. The question was asked me whether I had bought the interest in good faith; I said ' Yes.' They asked me to get a release, which I agreed to do."

When asked to explain portions of these letters, so as to make their statements correspond with, or not to antagonize his present contention, the defendant stood dumb before the question, simply saying, " I do not know what it means; I cannot explain it." It is quite impossible, I think, to read these letters without being convinced that the defendant clearly understood that the complainant still had an interest in the " old place," and that both parties understood that the relation of debtor and creditor still subsisted in respect to the loan. This latter fact is, of itself, decisive as to the character of the deed. *Judge* v. *Reese, 9 C. E. Gr. 387*. The deed must be declared to be a mortgage.

The defendant, subsequent to the conveyance made to him by the complainant, obtained conveyances from all the other children of Barney Budd, so that he acquired title to the whole farm. He sold it, in June, 1875, for $20,000. The complainant now insists that he shall account to him at that valuation, while the defendant says that he is only bound to account for its actual value. The defendant further says that he sold the farm for a sum greatly in excess of its actual value, in consequence of the liberal terms of payment he gave; that he has not as yet collected the whole of the purchase-money, and that the part remaining unpaid cannot be made out of the property. The only absolute test we can have of the value of a merchantable article is what it has been sold for at a fair sale. All other means of

Budd *v.* Van Orden.

ascertaining the value of a merchantable commodity are speculative, and must, to a greater or less extent, be uncertain. A sale is a demonstration of the fact, while estimates, even by the best judges, are simply matters of opinion, which, at best, are only approaches to the fact. The sale in this case, I think, conclusively settled the value of the farm as between these parties. The defendant does not pretend that he obtained an exorbitant price by illegal means. If he did, it would do him no good. He would not be heard to set up his own fraud to escape liability. He made the sale, and agreed upon such terms of payment as he was willing to accept, and took such security for the purchase-money as he thought proper. His conveyance of the complainant's interest is valid against the complainant. There is nothing in the case which will justify even a suspicion that the defendant's purchaser took title with notice of the complainant's rights. Having made a conveyance which is effectual against the complainant, in passing his rights for a certain price, I think it is clear, upon the plainest principles of justice, that he is bound to account to the complainant at the price at which he sold his interest. He occupies the position of a trustee, and cannot trade on his trust. He cannot sell at one price and account to his *cestui que trust* for a less price. Besides, there is nothing before the court which tends to show that the defendant will not be able to enforce payment of every penny of the purchase-money remaining unpaid. He took a mortgage for part. He doubtless also took the mortgagor's bond. To take such evidence of the debt secured by the mortgage is the universal practice. In the absence of direct proof to the contrary, it must be assumed that the parties to this transaction transacted their business as such business is usually done, and that the defendant acted with ordinary prudence and caution. No attempt has been made to show that the obligor of the bond is insolvent, or that the money for which it was given cannot be collected by due course of law. In this posture of affairs, I think the court is bound to assume that the bond is a valid and available instrument. That being so, the defendant is bound, as a matter of simple honesty, to pay the complainant for his interest in the farm at the rate at which he sold it. A decree in conformity to this opinion has been advised.